IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-0383-MSK-STV

JERILYN E. APODACA,

    Plaintiff,

v.

COLORADO NONPROFIT DEVELOPMENT CENTER, a Colorado non-profit corporation in good standing doing business as Families Forward Resource Center,

    Defendant.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (# **79**), the Plaintiff's Response (# **84**), and the Defendant's Reply (# **92**); the Plaintiff's Motion to File Brief Out of Time (# **84**), and the Defendant's Motion to Restrict Access (# **90**, **91**).

In this action, Ms. Apodaca brings the following claims: (1) a violation of the Equal Pay Act (EPA), (2) retaliation for reporting child neglect under Colorado law, (3) wrongful termination in violation of public policy under Colorado law; and (4) intentional infliction of emotional distress. (# **56**) She also requests an award of exemplary damages. The second claim for retaliation was dismissed upon the Magistrate Judge's recommendation. CNDC now moves for summary judgment on the remaining claims.

## I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. BACKGROUND[1]

In 2005, Plaintiff Jerilyn Apodaca began working as an intern for defendant Colorado Nonprofit Development Center, which had done business as the Lowry Family Center and the Families Forward Resource Center.[2] She was hired in 2007 and became Director of Programs in early 2012 without a raise but with an increase in responsibilities. As Director of Programs, Ms. Apodaca managed four CNDC programs: Family Development, Parent Education, Youth Development, and Community Health. At some point, her compensation was increased to $35,000 annually. In March 2014, she received a cost-of-living increase to $35,700 annually, but in 2013 was denied a merit-based raise due to work performance.

Nonparty comparator Ron Allen began working for CNDC as a Fatherhood Coordinator in October 2012 at a salary of $32,000 annually. He reported to Ms. Apodaca. In April 2013, Ms. Apodaca and Mr. Allen asked Dave Bechhoefer, executive director of CNDC, for an increase to Mr. Allen's salary based on extra duties that required extra time expenditure. Mr. Allen was given a 20% increase to $38,400, which corresponded to the increase in the number of hours he worked. He still reported to Ms. Apodaca. Ms. Apodaca concedes that the Fatherhood Coordinator position did not require the same level of skills duties supervision, effort, and responsibilities as her positions.

By 2014, Ms. Apodaca was overwhelmed by her responsibilities. As a consequence, Mr.

---

[1] The Court recounts the facts in the light most favorable to Ms. Apodaca, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). In large part, the parties do not dispute the material facts.
[2] For convenient reading, the Court refers to the Defendant, in its capacity as the Lowry Family Center or the Families Forward Resource Center, as CNDC.

Bechhoefer reassigned the supervision of the Parent Education and Youth Development programs from Ms. Apodaca to Mr. Allen, and promoted him to be Director of Programs. In conjunction with his promotion and increased responsibilities, Mr. Allen's compensation was increased to $40,000 annually.

Ms. Apodaca continued as the Director of Programs, but oversaw only the Family Development and Community Health programs. She received a merit-based raise at her performance review in early 2015 with delayed implementation until she returned from medical leave. While she was on medical leave, however, Ms. Apodaca was terminated for causes not relevant to her claims. Her raise was made retroactive to the beginning of 2015, resulting in a final annual salary of $37,485.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.

3

*See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV.  DISCUSSION

### A.  Motion to File out of Time

Ms. Apodaca asks the Court for leave to file an untimely response to the Motion for Summary Judgment (**# 84**). Finding no prejudice to CNDC, the Court grants her request.

### B.  Claim that CNDC Violated the Equal Pay Act

The Equal Pay Act (EPA) proscribes wage discrimination between employees on the basis of sex. To establish a *prima facie* claim under the EPA, a plaintiff must show (1) she was performing work substantially equal to her male comparators in light of the skills, duties,

4

supervision, effort, and responsibilities of the positions; (2) the work was performed under basically the same conditions; and (3) the male comparators were paid more under these circumstances. *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015). If the plaintiff establishes a prima facie claim, the burden then shifts to the employer to show that the pay differential is justified by a valid reason contained in a statutory list: (1) a seniority system; (2) a merit system; (3) a system where earnings are measured by quantity or quality of production; or (4) a factor other than sex. 29 U.S.C. § 206(d)(1). Unlike Title VII, where the plaintiff has the ultimate burden to prove discriminatory intent, with regard to clams under the EPA, the employer has the ultimate burden to prove that the difference in pay was based on a factor other than sex. *Sprague v. Thorn Ams. Inc*., 129 F.3d 1355, 1364 (10th Cir. 1997).

CNDC makes two arguments. The first is that Ms. Apodaca cannot establish a *prima facie* case because her position was not substantially equal to Mr. Allen's position.

Whether work is substantially equal depends upon whether the skills, effort, and responsibility required is substantially the same. 29 U.S.C. § 206(d)(1). Job descriptions and titles are not determinative; rather, it is the actual nature of the job that determines substantial equality. *Riser*, 776 F.3d at 1196. Although there is no precise measure used to determine equal skill, equal effort, and equal responsibility, courts are generally remain cognizant of the "broad remedial purpose of the law." 29 C.F.R. § 1620.14. Thus EPA disregards minor differences in skill, effort, or responsibility, however it does not equate jobs that appear to be alike or comparable. *See* 29 C.F.R. § 1620.14; *Sprague*, 129 F.3d at 1364.

Ms. Apodaca puts forth a number of arguments in her response: (1) Mr. Allen's educational background is different from hers; (2) Mr. Allen's extra duties are a pretext for paying him more, as they were both salaried employees exempt from overtime requirements; (3) Mr.

5

Allen delegated his extra duties to another employee and did not actually perform them; and (4) Mr. Allen was given a raise proportionate to his increased workload upon promotion and Ms. Apodaca was not. Even if true, none of these arguments address the nature of the skills, effort, or responsibilities required by the two positions.

Turning to the record, Ms. Apodaca concedes that Mr. Allen's initial Fatherhood Coordinator position was not substantially equal to her position as Director of Programs. Thus the comparison of import is between the Director of Programs positions that each held. Putting aside the identical title and assuming that the type of supervision was similar as to the programs under the purview of each, it is clear and undisputed that Mr. Allen had more work and responsibility than did Ms. Apodaca. Before his promotion to Director of Programs, Mr. Allen sought and was assigned extra duties, and received additional compensation at Ms. Apodaca's request. When he was promoted to Director of Programs, he retained these duties and assumed Ms. Apodaca's responsibilities to supervise Parent Education and Youth Development programs. Viewed facially, it appears that Mr. Allen's responsibilities exceed those of Ms. Apodaca. Ms. Apodaca has put forth no evidence that her responsibilities equaled or exceeded those of Mr. Allen. *See Riser*, 776 F.3d at 1196. The Court therefore finds that Ms. Apodaca has failed to establish a *prima facie* claim under the EPA.

It may be that Ms. Apodaca is seeking relief from sex discrimination rather than pay discrimination. For example, she notes that her education is different from Mr. Allen's,[3] that Mr. Allen received a raise when he was promoted to Director but that she did not, that Mr. Allen was

---

[3] Ms. Apodaca argues that an employee's level of education may be used to determine whether equal work is being performed, citing to *Glunt v. GES Exposition Services Inc.*, 123 F. Supp. 2d 847, 860 (D. Md. 2000). *Glunt* stands for the proposition that education level is pertinent to an EPA claim only when it is relevant and necessary to the job in question, which Ms. Apodaca does not allege.

paid significantly more than she was even though he was her subordinate, and that Mr. Allen delegated his extra duties instead of performing them. As noted above, these facts are not relevant to the equal-pay analysis. This is because the Equal Pay Act is concerned with the very limited question of whether two people are being compensated differently even though they are performing the same work. Questions about disparate education levels, disparate raises, disparate pay relative different positions in the organizational hierarchy, and disparate completion of duties might fall within the scope of disparate treatment based on sex discrimination which violates Title VII, but Ms. Apodaca has not brought such a claim. Given that Ms. Apodaca is represented by counsel, the Court cannot infer one.

For the foregoing reasons, Ms. Apodaca's claim must be dismissed.

**C.     Remaining State-Law Claims**

Wrongful termination in violation of public policy and intentional infliction of emotional distress are state-law causes of action. Having dismissed the federal claim over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(3).

**D.     Motions to Restrict Access**

CNDC seeks to restrict access to exhibits accompanying its Motion for Summary Judgment. CNDC asserts that a number of exhibits contain confidential employment information such as salary information, social security numbers, and performance issues of Ms. Apodaca and other CNDC employees. CNDC did not seek provisional restriction of the exhibits, so they have been publicly available for months.

The Supreme Court acknowledged a common law right of access to judicial records in *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the

recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co*., 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

Local Rule 7.2(b) requires a party seeking restricted access to demonstrate, among other things, "the [private] interest to be protected" by the restriction and "a clearly defined and serious injury that would result if access is not restricted." Furthermore, that rule provides that "stipulations between the parties or stipulated protective orders with regard to discovery" are, of themselves, insufficient to warrant restricted access.

CNDC makes only blanket assertions about the many exhibits it seeks to restrict. It says that the potential injury is the dissemination of "confidential information," but it does not designate what information is confidential and why. Many of the exhibits are Ms. Apodaca's and Mr. Allen's personnel files containing salary information. Other exhibits are emails from municipal agencies, some of which are copied or sent to Ms. Apodaca. Some exhibits contain Ms. Apodaca's performance reviews and others describe her work performance. One exhibit is a written warning to a CNDC employee who is not a party to this action.

In addition, CNDC has made much of this information public, by not requesting restriction before this point in time and by including information in its briefs. Finally, CNDC offers no reason why restriction is necessary — put another way, why redaction would not accomplish the purposes it expresses.

Nevertheless, the Court notes that there are two exhibits where Mr. Allen's social security number is available and where it correlates to his name. Redaction of those two exhibits to delete Mr. Allen's social security number is appropriate.

Accordingly, the Court grants the motion in part. The Clerk shall restrict access to ## **79-8**, **79-10, # 84-3** at Level 1. Within three days of this order, CNDC is **ORDERED** to file a copy of its Exhibits H and J (**# 79-8**, **79-10**) redacting the social security number and Ms. Apodaca is **ORDERED** to file a copy of her Exhibit 2 (**# 84-3**) redacting the same social security number within three days of this order. The motion is denied in all other respects, but CNDC is free to renew the motion with more specific information about each exhibit it seeks to restrict.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 79**) is **GRANTED** as to the Plaintiff's claim under the EPA. This claim is **DISMISSED WITH PREJUDICE**.[4] The Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction under 28 U.S.C. § 1367.

Dated this 6th day of October, 2017.

**BY THE COURT:**

Marcia S. Krieger
United States District Court

---

[4] Because the claim cannot be pursued as a matter of law and there has been no proffer of allegations that can address the deficiencies in the showing, the Court is disinclined to allow further amendment of the Complaint.